**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF ARKANSAS**
**TEXARKANA DIVISION**

U. S. DISTRICT COURT
WESTERN DIST. ARKANSAS
FILED
MAR 0 4 2014
CHRIS R. JOHNSON, CLERK
DEPUTY CLERK

STEPHEN RAFAELLI, Individually and on
behalf of all others similarly situated                                    PLAINTIFF

vs.                                          CASE NO. *14- 4038*

CERTAIN UNDERWRITERS AT
LLOYD'S, LONDON                                                            DEFENDANT

**DEFENDANTS CERTAIN UNDERWRITERS AT LLOYD'S,**
**LONDON'S NOTICE OF REMOVAL**

PLEASE TAKE NOTICE that Defendants Certain Underwriters at Lloyd's, London
(collectively hereinafter, the "Underwriters") hereby remove the above-captioned action from the
Circuit Court of Miller County, Arkansas to the United States District Court for the Western
District of Arkansas, pursuant to 28 U.S.C. § 1332, 28 U.S.C. § 1441, 28 U.S.C. § 1446, and 28
U.S.C. § 1453, on the basis of the following facts, which demonstrate the existence of subject
matter jurisdiction in this Court:

1.

On November 22, 2013, Plaintiff commenced this action by filing a Summons and
Complaint in the Circuit Court of Miller County, Arkansas in Case No. 46CV-13-281-2 (the
"State Court Action").  (Ex. A.)

2.

Plaintiff did not properly serve Underwriters with the Summons and Complaint in the
State Court Action, however.

3.

On January 2, 2014, Underwriters filed a Motion to Dismiss the State Court Action in the
Circuit Court of Miller County, Arkansas, pursuant to Ark. R. Civ. P. 12(b)(4), 12(b)(5) and
12(b)(6).  (Ex. B.)

4.

On January 2, 2014, Underwriters also filed an Answer and Affirmative Defenses, asserting that Underwriters had not properly been served with the Summons and Complaint in the State Court Action. (Ex. C.)

5.

On January 24, 2014, Plaintiff filed a Motion to Defer Resolution of Defendants' Motion to Dismiss (Ex. D.)

6.

On January 28, 2014, Plaintiff obtained a proper Summons for Underwriters issued by the Circuit Court of Miller County, Arkansas. (Ex. E.)

7.

The Proof of Service filed in the Circuit Court of Miller County, Arkansas shows that Underwriters were served with the Summons and Complaint in the State Court Action on February 3, 2014. (Ex. F.)

8.

On February 7, 2014, Defendants Certain Underwriters at Lloyd's, London filed a Response to Plaintiff's Motion to Defer Resolution of Defendants' Motion to Dismiss (Ex. G.)

9.

On March 3, 2014, Defendants Certain Underwriters at Lloyd's, London filed their Answer to Summons and Complaint served on February 3, 2014. (Ex. H.)

10.

This Notice of Removal is timely because it is filed within thirty days of service of the Summons and Complaint upon Underwriters. 28 U.S.C. § 1446(b); *Murphy Brothers, Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 354 (1999).

2

11.

As required by 28 U.S.C. § 1446(b), attached hereto as Exhibits A – H, are copies of all process, pleadings, orders, and other papers or exhibits in the State Court Action.

12.

Under 28 U.S.C. § 1446(a), venue for this removal is proper in the Western District of Arkansas, because this is the district and division embracing the place where the State Court Action is pending.  28 U.S.C. § 1446(a)(2)

13.

Pursuant to 28 U.S.C. § 1446(d), written notice of the removal of this action will be promptly served upon Plaintiffs' counsel, and a Notice of Filing Notice of Removal is being filed with the Clerk of the Circuit Court in and for Miller County, Arkansas.  A true and correct copy of this Notice of Filing Notice of Removal is attached hereto as Exhibit "I."

## BASIS OF FEDERAL DIVERSITY JURISDICTION
## UNDER THE CLASS ACTION FAIRNESS ACT

14.

This Court has jurisdiction over this action under the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d) and 28 U.S.C. § 1453(b), because this lawsuit is a "class action," as defined by CAFA, in which, the number of proposed class members is not less than 100, there is minimal diversity of citizenship and the amount in controversy exceeds $5 million, as explained further below.

15.

Congress enacted CAFA to enlarge federal jurisdiction over proposed class actions. CAFA provides that a class action against a non-governmental entity may be removed to federal court if: (a) the number of proposed class members is not less than 100; (b) any member of the proposed class is a citizen of a state different from any defendants; and (c) the aggregate amount

in controversy exceeds $5,000,000, exclusive of interests and costs.  28 U.S.C. §§ 1332(d)(2),

1332(d)(5), and 1453(b).  As set forth below, all of the requirements for removal are satisfied.

A.    **The Proposed Class Includes More Than 100 Members**

16.

CAFA's requirement that the proposed class be at least 100 members in size is satisfied

here.  The Complaint does not allege the size of the putative class, nor does it allege that the

putative class consists of less than 100 members.  The Complaint does allege, however, that the

putative class consists of:

> All persons and entities that received "actual cash value"
> payments, directly or indirectly, from Lloyd's for loss or damage
> to a dwelling or other structure located in the State of Arkansas,
> such payments arising from events that occurred within the ten
> years preceding the date of filing of this Class Action Complaint,
> where the cost of labor was depreciated.  Excluded from the Class
> are: (1) all persons and entities that received payment from Lloyd's
> in the full amount of insurance shown on the declarations page; (2)
> Lloyd's and its affiliates, officers, and directors; (3) members of
> the judiciary and their staff to whom this action is assigned; and (4)
> Plaintiff's counsel.[1]

(Class Action Compl. ¶ 22).

17.

Underwriters have undertaken to identify the claims of persons that would be included in

the putative class.  Underwriters have determined that during the ten years between November

22, 2003 and November 22, 2013, persons or entities insured in Arkansas by Underwriters, with

claim payments at issue in the Complaint, totaled in excess of 800 (Runge Declaration, at Exhibit

"J", ¶12; 28 U.S.C. § 1746.).  The evidence clearly indicates that the number of putative class

members, based upon the allegations of the Complaint, exceeds 100 persons.  (*Id.*)

---

[1] Plaintiff erroneously uses the term "Lloyd's" to refer to Underwriters.

18.

CAFA's first requirement, that the proposed class contain at least 100 members, is therefore satisfied.  28 U.S.C. § 1332(d)(5).

**B.      Minimal Diversity of Citizenship Exists**

19.

CAFA's second requirement, that any one member of the proposed class be a citizen of a state different from any defendant, is also satisfied.  28 U.S.C. § 1332(d)(2).

20.

The named Plaintiff in the Class Action Petition is alleged to be a citizen of Arkansas. (Ex. A, Compl. ¶ 1.)

21.

At least one of the Underwriters is a corporation organized under the laws of England and Wales.  (Riddington Declaration, at Ex. K, ¶5-6; 28 U.S.C. § 1746.)

22.

Thus, at least one "member of a [putative] class of plaintiffs is a citizen of a State" and at least one "defendant is a . . . citizen or subject of a foreign state" for the purposes of federal diversity analysis.  *See* 28 U.S.C. § 1332(d)(2).  Minimal diversity therefore exists under 28 U.S.C. § 1332(d).

**C.      The Amount in Controversy Exceeds $5,000,000**

23.

CAFA's third requirement, that the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs, is satisfied.  28 U.S.C. § 1332(d)(2).  Although Underwriters dispute liability and damages, Plaintiff's claims for relief on behalf of himself and his proposed class, if granted, could exceed $5,000,000.

5

24.

While Plaintiff attempts to limit the putative class's recovery to less than $5,000,000, a class plaintiff's allegation or stipulation that the amount in controversy is less than the jurisdictional minimum is invalid. *Standard Fire Ins. Co. v. Knowles*, 133 S. Ct. 1345, 1348-49 (2013).

25.

Plaintiff's allegations place more than $5 million in controversy, so the amount-in-controversy requirement of § 1332(d)(2) is met. When analyzing the amount in controversy, courts look to "whether a fact finder *might* legally conclude" that the amount in controversy exceeds $5 million. *Hartis v. Chicago Title Ins. Co.,* 656 F.3d 778, 781 (8th Cir. 2009); *Basham v. Amer. Nat'l Cty. Mutual Ins. Co.*, No. 4:12-CV-4005, 2013 WL 5755684, at *8 (W.D. Ark. Oct. 23, 2013). "[U]nless recovery of an amount exceeding the jurisdictional amount is legally impossible, the case belongs in federal court." *Back Doctors Ltd. v. Metropolitan Prop. & Cas. Ins. Co.*, 637 F.3d 827, 837 (7th Cir. 2011). That plaintiffs allege an amount below the jurisdictional minimum, or even stipulate that the class will not accept an amount more than the jurisdictional minimum, does not alter the amount-in-controversy analysis. *Standard Fire Ins. Co. v. Knowles*, 133 S. Ct. 1345, 1348-49 (2013); *See  Bell v. Hershey Co.*, 557 F.3d 953, 958 (8th Cir. 2009). To the contrary, Plaintiff's allegations here raise the possibility of compensatory damages, statutory penalties, punitive damages, injunctive relief, and attorneys' fees, the aggregated potential value of which exceeds $5 million.

26.

As shown below, the total value of the compensatory damages, statutory penalties, punitive damages, attorney's fees, and equitable relief that may be awarded to Plaintiff exceeds $5,000,000.

**1.    Plaintiff Seeks Contributory Damages Totaling More Than $1,500,000**

27.

In his Complaint, Plaintiff alleges he and all other class members "are entitled to recover damages sufficient to make them whole for all amounts Defendant [sic] unlawfully withheld from their ACV payments as labor cost depreciation." (Ex. A, Compl. ¶ 43.)

28.

Plaintiff defines the class to include "[a]ll persons and entities that received 'actual cash value' payments, directly or indirectly, from Lloyd's for loss or damage to a dwelling or other structure located in the state of Arkansas, such payments arising from events that occurred within the ten years preceding the date of filing this Class Action Complaint, where the cost of labor was depreciated." Compl. ¶ 22.

29.

For the ten years preceding this action, as alleged for the putative class, Underwriters had in excess of 800 claims for property damage in Arkansas, which fall within the class definition. (Runge Declaration, Ex. J at ¶12.)  Underwriters have had each of the files on these claims reviewed to determine the total depreciation withheld on these claims.  Underwriters then determined how much of the depreciation on each of these claims was attributable to labor costs.

30.

From a review of the information available in the claim files, Underwriters have determined that more than $1,500,000 was withheld from actual cash value payments to putative class members as labor cost depreciation. (Runge Declaration, Ex. J at ¶15.)

31.

Thus, Plaintiff's Complaint seeks more than $1,500,000 in compensatory damages.

## 2.    Plaintiff Seeks Statutory Penalties Totaling $180,000

32.

Plaintiff's Complaint also requests a statutory penalty under Ark. Code Ann. § 23-79-208, which provides for a 12% penalty in all cases where an insurance provider is found liable for not paying as required under an insurance policy.  (Ex. A, Compl., Prayer for Relief (F)).

33.

Underwriters deny they owe any penalty in this matter.  Nevertheless, the penalty is in controversy.  Applying this penalty to Underwriters' $1,500,000 calculation of compensatory damages increases the amount in controversy by $180,000.

## 3.    Punitive Damages of at Least $1,500,000 Are at Stake

34.

Arkansas law provides that punitive damages are potentially available where an insurer "affirmatively engages in dishonest, malicious, or oppressive conduct in order to avoid a just obligation to its insured," such as where an insurer's representative "lied by stating there was no insurance coverage . . . ." *Columbia Nat'l Ins. Co. v. Freeman*, 64 S.W.3d 720, 723 (Ark. 2002); *see also S. Farm Bureau Cas. Ins. Co. v. Allen*, 934 S.W.2d 527, 530 (Ark. 1996).  Alternatively, Arkansas law allows punitive damages for fraud.  *See Curtis Lumber Co. v. La. Pac. Corp.*, 618 F.3d 762, 785 (8th Cir. 2010).  Underwriters deny engaging in any conduct that would give rise to punitive damages. Nonetheless, Plaintiff's factual allegations must be accepted as true for purposes of analyzing the amount in controversy.  *See, e.g., Wiemers v. Good Samaritan Soc'y*, 212 F. Supp. 2d 1042, 1048 (N.D. Iowa 2002).

35.

While Plaintiff does not expressly request punitive damages in the Complaint, this Court has held that punitive damages are considered part of the amount in controversy when evaluating

whether jurisdiction exists under CAFA "'even where a plaintiff's complaint does not include a prayer for punitive damages or allege that the defendant acted wantonly or maliciously.'" *Basham v. Am. Nat'l Cnty. Mut. Ins. Co.*, No. 4:12-CV-4005, 2013 WL 5755684, at \*5 (W.D. Ark. Oct. 23, 2013) (quoting *Knowles v. Standard Fire Ins. Co.*, 4:11-CV04044, 2013 WL 3968490, at \*10 (W.D. Ark. Aug. 2, 2013). Indeed, "[t]he question is whether [Underwriters'] actions, as alleged in the Plaintiff['s] complaint, constitute the type of conduct that could potentially support an award of punitive damages." *Id.*

36.

Although Underwriters deny the allegations of the Complaint, Plaintiff's allegations of fraudulent concealment, for example, could potentially allow an award of punitive damages under Arkansas law. *See Freeman*, 64 S.W.3d at 723 (punitive damages for bad faith potentially available where insurer "affirmatively engages in dishonest, malicious, or oppressive conduct in order to avoid a just obligation to its insured.").

37.

This Court has previously included potential punitive damages in its calculation of the amount in controversy under CAFA under facts nearly identical to those here. In *Knowles*, 2013 WL 3968490, at \*10, the plaintiffs moved to remand the case to state court, arguing the amount in controversy was below CAFA's $5,000,000 minimum. This Court rejected that argument, holding plaintiffs' allegation that "Defendant actively concealed information about entitlement to [further payment] and represented that the amount paid was all that was owed" created "at least the possibility that punitive damages could be awarded." *Id.*

38.

Here, punitive damages calculated even at a 1:1 ratio would add over $1,500,000 to the amount in controversy. This is well within the range of what this Court has previously found

9

appropriate in calculating the amount in controversy. *See*, *e.g.*, *Basham*, 2013 WL 5755684, at *6 (using punitive damages multiplier of six in calculating amount in controversy under CAFA); *Knowles*, 2013 WL 3968490, at *11 (explaining that a 1:1 ratio is "well within the acceptable range" of punitive damage awards).

39.

Thus, the Plaintiff's allegations, if true, could potentially allow a punitive damage award in excess of $1,500,000.

### 4. Plaintiff Seeks Attorney's Fees That Could Total $1,272,000

40.

Plaintiffs allege that they are entitled to recover their reasonable attorney's fees. (Ex. A, Compl., Prayer for Relief.) Under Arkansas law, a policyholder may be entitled to collect reasonable attorney's fees resulting from prosecuting an action against an insurance company for allegedly failing to pay what is owed under the insurance policy. Ark. Code Ann. § 23-79-208(a)(1).

41.

Plaintiffs' potential recovery of attorneys' fees should be included in the amount-in-controversy analysis. *See Basham*, 2013 WL 5755684, at *6 (applying an estimate of reasonable attorneys' fees available under Ark. Code Ann. § 23-79-208); *Knowles*, 2013 WL 3968490, at *6 ("[I]ncluding an estimate of attorney's fees in the amount in controversy is appropriate where . . . such fees are recoverable pursuant to state statute.").

42.

Moreover, this Court has held that reasonable attorneys' fees can equal as much as forty percent of the Plaintiff's total damages. *Knowles*, 2013 WL 3968490, at *6. This holding

comports with others in the Eighth Circuit. *See, e.g., O'Brien v. United Healthcare Servs.*, Case No. 12-0114-CV-W-ODS, 2012 WL 1232312, at *2 (W.D. Mo. April 12, 2012).

43.

As demonstrated above, the total amount in controversy, including compensatory damages, statutory penalties, and punitive damages, is $3,180,000. Thus, a 40% award for attorney's fees would total $1,272,000, and this amount should be added to the total amount in controversy.

**5.** **Plaintiff Seeks Equitable Relief Potentially Worth Approximately $1,500,000**

44.

The Complaint also seeks declaratory and injunctive relief. Plaintiff requests declarations "that Defendants have breached their contractual obligations to the Class by depreciating labor costs," and "that Defendants have been unjustly enriched as the result of their wrongful conduct." Compl., Prayer for Relief, ¶¶ C, D. Plaintiff also seeks injunctive relief "enjoin[ing] Defendants from engaging in the unlawful and unjust conduct complained of herein." *Id.*, Prayer for Relief, ¶ H.

45.

"[I]n a suit for declaratory or injunctive relief the amount in controversy is the value to the plaintiff of the right that is in issue." *Usery v. Anadarko Petroleum Corp.*, 606 F.3d 1017, 1018 (8th Cir. 2010); *see also Fitzgerald Railcar Servs. of Omaha, Inc. v. Chief Indus.*, 141 F. App'x 491, 492 (8th Cir. 2005). This Court has applied this rule in a putative class action under CAFA. *See Basham*, 2013 WL 5755684, at *8.

46.

Underwriters deny that Plaintiff is entitled to any injunctive relief. However, this allegation must be included in determining the amount in controversy. The alleged value of the

11

claim for injunctive relief—that is, precluding Underwriters' future depreciation of labor costs—parallels Plaintiff's alleged compensatory damages concerning past labor-based depreciation.

47.

Thus, $1,500,000 should be added to the total amount in controversy to reflect the monetary value of the equitable relief Plaintiff seeks.

### 6.     The Total Amount in Controversy Exceeds $5,000,000

48.

As shown above, Plaintiff's potential compensatory damages, statutory penalties, punitive damages, attorneys' fees, and injunctive relief total at least $5,952,000, well above CAFA's jurisdictional minimum.    Thus, this action satisfies the amount-in-controversy requirement of 28 U.S.C. § 1332(d)(2).

### D.     No Exceptions to CAFA Jurisdiction Are Applicable Here

49.

None of the exceptions to CAFA jurisdiction described by 28 U.S.C. § 1332(d) applies here.  First, the so-called "local controversy" and "home state" exceptions do not apply, as no Underwriter is a citizen of Arkansas.  (Complaint, Ex. A, ¶3; 28 U.S.C. §§ 1332(d)(3)-(4).) Next, § 1332(d)(5)(A) does not apply because no Underwriter is a State, State official or other governmental entity against which this Court may be foreclosed from ordering relief.  Further, § 1332(d)(5)(B) does not apply because the number of proposed class plaintiffs exceeds 100, as set forth above.  Finally, § 1332(d)(9) does not apply because Plaintiffs' claims do not involve securities or the internal affairs or governance of a corporation or other form of business enterprise.

## CONCLUSION

50.

Because the class is composed of at least 100 plaintiffs, minimal diversity exists between Plaintiff and Underwriters, the amount in controversy exceeds $5,000,000, and no exceptions to jurisdiction under 28 U.S.C. § 1332(d) are applicable, this Court has subject matter jurisdiction over this case pursuant to CAFA.

WHEREFORE, Underwriters remove the State Court Action to this Court, and request that the Court proceed with this action as if it had originally commenced in this Court and make all orders necessary and appropriate to effectuate this removal.

Respectfully submitted, this 4th day of March 2014.

By: _____

Darby V. Doan
Ark. State Bar No. 96064
**HALTOM & DOAN**
6500 N. Summerhill Road, Suite 100
Texarkana, TX 75505-6227
Telephone:      903-255-1000
Facsimile:      903-255-0800
Email:          ddoan@haltomdoan.com

DAVID D. WILSON
Ark. State Bar No. 90112
**FRIDAY, ELDREDGE & CLARK, LLP**
400 West Capitol Avenue, Suite 2000
Little Rock, AR  72201-3522
Telephone:      501-370-1564
Facsimile:      501- 244-5380
Email:          wilson@fridayfirm.com

OF COUNSEL:

PAUL L. FIELDS, JR.
**FIELDS HOWELL**
191 Peachtree Street NE, Suite 4600
Atlanta, GA 30303
Telephone:        404-214-1252
Facsimile:        404-214-1251
Email:            pfields@fieldshowell.com

GREGORY L. MAST
**FIELDS HOWELL**
191 Peachtree Street NE, Suite 4600
Atlanta, GA 30303
Telephone:        404-214-1262
Facsimile:        404-214-1251
Email:            gmast@fieldshowell.com

JOSEPH C. GEBARA
**FIELDS HOWELL**
191 Peachtree Street NE, Suite 4600
Atlanta, GA 30303
Telephone:        404-214-1734
Facsimile:        404-214-1251
Email:            jgebara@fieldshowell.com

ATTORNEYS FOR DEFENDANTS
CERTAIN UNDERWRITERS AT
LLOYD'S, LONDON

## CERTIFICATE OF SERVICE

I hereby certify that on the 4th day of March 2014, a true and correct copy of the foregoing was served by the method indicated below, to the following:

Matt Keil
John C. Goodson
Keil & Goodson, P.A.
406 Walnut Street
Texarkana, AR 71854

( )   U.S. Mail, Postage Prepaid
(X)  Hand Delivered
( )   Overnight Mail
( )   Facsimile
(X)  Email

Richard E. Norman
Crowley Norman, LLP
Three Riverway, Suite 1775
Houston, TX 77056

( )   U.S. Mail, Postage Prepaid
( )   Hand Delivered
( )   Overnight Mail
( )   Facsimile
(X)  Email

Stephen Engstrom
Wilson Engstrom Corum & Coulter
200 River Market Avenue, Suite 600
Post Office Box 71
Little Rock, AR 72203

( )   U.S. Mail, Postage Prepaid
( )   Hand Delivered
( )   Overnight Mail
( )   Facsimile
(X)  Email

_____
Darby V. Doan