# EXHIBIT A

# SUMMONS COPY

IN THE CIRCUIT COURT OF MILLER COUNTY, ARKANSAS           CAUSE NO:  46CV-13-281-2

PLAINTIFF  STEPHEN RAFAELLI, Individually & on behalf of all others similarly situated
(If represented by attorney, give his name & address below. If not represented by attorney, give Plaintiff's address below.)
ATTORNEY'S NAME  MATT KEIL                    ADDRESS  406 WALNUT
CITY  TEXARKANA                               STATE  AR           ZIP  71854

VS

DEFENDANT  CERTAIN UNDERWRITERS AT LLOYD'S, LONDON
(If represented by attorney, give his name & address below. If not represented by attorney, give Defendant's address below.)
ATTORNEY'S NAME                               ADDRESS
CITY  NEW YORK                                STATE  NY          ZIP  10019

## SUMMONS IS ISSUED FOR:

NAME  CERTAIN UNDERWRITERS AT LLOYD'S, LONDON  REGISTERED AGENT: LLOYD'S AMERICA INC
ADDRESS  THE MUSEUM OFFICE BLDG     CITY  NEW YORK     STATE  NY   ZIP  10019

STATE OF ARKANSAS- TO DEFENDANT:

1. A lawsuit has been filed against you. The relief demanded is stated in the attached complaint.
2. Within 30 days after service of this summons on you (not counting the day you received it) or 60 days if you are incarcerated in any jail, penitentiary, or other correctional facility in Arkansas, you must file with the Clerk of this court a written answer to the complaint or a motion under Rule 12 of the Arkansas Rules of Civil Procedure.
3. The answer or motion must also be served on the Plaintiff or Plaintiff's attorney whose name and address is listed above.
4. If you fail to respond within the applicable time period, judgment by default may be entered against you for the relief demanded in the complaint.

WITNESS MY HAND AND SEAL OF THE CIRCUIT COURT this  3RD   day of  DECEMBER  , 2013

ADDRESS OF CIRCUIT CLERK'S OFFICE:
412 LAUREL RM 109                             MARY PANKEY, CIRCUIT CLERK
TEXARKANA, AR 71854                           BY                 DEPUTY CLERK

# PROOF OF SERVICE

_____ On this date:            . I personally delivered this summons & complaint to the individual being served
at address:                                  ; OR _____ I left this summons & complaint in the
proximity of the individual being served after their refusal to accept said summons & complaint.

_____ On this date:            , I left the summons & complaint at the individual's dwelling, house or usual place of
abode at address:                      with                         , a person at
least 14 years of age who resides there.

_____ On this date:            , I delivered the summons & complaint to                    (name),
an agent authorized by appointment or by law to receive service of summons on behalf of
(name of party being served); OR

_____ I am the Plaintiff or an attorney of record for the Plaintiff in this lawsuit and I served the summons & complaint on
the Defendant by certified mail, return receipt requested, restricted delivery, as shown by the attached signed return
receipt; OR

_____ I am the Plaintiff in this lawsuit and I mailed a copy of the summons & complaint by first-class mail to the Defendant,
together with two copies of a notice & acknowledgment and received the attached notice and acknowledgment form
within twenty days after the date of mailing.

_____ OTHER (specify):                                                              ; OR

_____ I was unable to execute service because:                                      ;
(See list at bottom of acknowledgment page.)

My fee is $

RE: SUMMONS ON CASE NO. 46CV-13-281-2

TO BE COMPLETED IF SERVICE IS BY A SHERIFF OR DEPUTY SHERIFF:

DATE:                              SHERIFF OF                    COUNTY, ARKANSAS

                                   BY:                            (SERVER)

                                   (PRINTED NAME, TITLE AND BADGE NUMBER)

TO BE COMPLETED IF SERVICE IS BY A PERSON OTHER THAN A SHERIFF OR DEPUTY SHERIFF:

DATE:                              BY:                                        (SIGNATURE)

                                   PRINTED NAME:

ADDRESS:

PHONE:

SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE:

                                                              NOTARY PUBLIC

MY COMMISSION EXPIRES:

ADDITIONAL INFORMATION REGARDING SERVICE OR ATTEMPTED SERVICE:

PAPER IS RETURNED UNSERVED              ATTEMPTED SERVICE:
FOR THE REASON CHECKED BELOW:           DATE     TIME     REMARKS
__ __ RECALLED BY
__ __ INCORRECT – NO SUCH ADDRESS
__ __ MOVED – NO FORWARDING ADDRESS
__ __ UNKNOWN AT ADDRESS SHOWN
__ __ MOVED – NEW ADDRESS BELOW

                                        BY:                      DEPUTY SHERIFF

# IN THE CIRCUIT COURT OF MILLER COUNTY, ARKANSAS

**STEPHEN RAFAELLI, Individually and
On behalf of all others similarly situated**

vs.                                       CASE NO. *46 CV-13-281-2*

**CERTAIN UNDERWRITERS
AT LLOYD'S, LONDON**                                       **DEFENDANT**

## CLASS ACTION COMPLAINT

Comes now Plaintiff Stephen Rafaelli, individually and on behalf of all others similarly situated, and for his Class Action Complaint against Defendant Certain Underwriters at Lloyd's, London ("Lloyd's") states and alleges the following:

### Parties

1.      Plaintiff is an individual resident of Miller County, Arkansas.

2.      Defendant Lloyd's is an association of insurance companies who have combined together to form an insurance exchange or syndicate to insure certain risks referred by various independent insurance brokers. Under Defendant's business model, the coverage for a particular risk is underwritten by a company or group of companies under a specific syndicate number identified to the insured only as "Certain Underwriters at Lloyd's, London." According to records maintained by the Arkansas Insurance Department, Lloyd's can be served with process through its registered agent in the United States: Lloyd's America, Inc., The Museum Office Building, New York, NY 10019. In addition, pursuant to Ark. Code Ann. § 4-20-113, Lloyd's can be served with process by registered or certified mail, return receipt requested, addressed to one or more of the governors of the entity by name at its principal place of business.

1

## Jurisdiction and Venue

3.      This Court has subject matter jurisdiction over this action because the amount in controversy exceeds the minimum jurisdictional limits of the Court.   Defendant is not an Arkansas citizen for purposes of federal court diversity analysis.   However, no individual Plaintiff's or Class Member's claim is equal to or greater than $75,000.00, inclusive of costs and attorneys' fees.   Moreover, the total damages of Plaintiffs and Class Members, inclusive of costs and attorneys' fees, does not exceed $5,000,000.00.

4.      This Court has personal jurisdiction over Defendant pursuant to Arkansas Code Annotated § 16-4-101 as Defendant has had more than minimum contact with the State of Arkansas and has availed itself of the privilege of conducting business in this state.   In addition, as explained below, Defendant has committed affirmative acts within the State of Arkansas that give rise to civil liability.

5.      Venue is proper in this forum pursuant to Ark. Code Ann. §§ 16-55-213(a) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this county.

## Factual Background

6.      Plaintiff contracted with Defendant for an insurance coverage for certain losses to a dwelling and other structures owned by Plaintiff and located at 320 Beech Street, Texarkana, Arkansas.   At all times relevant to this action Plaintiff's property was insured under Policy No. 313430, issued by Defendant

7.      On or about April 1, 2008, at a time when the above-described insurance policy was in full force and effect, Plaintiff suffered a covered loss to his property. He timely submitted a claim to Defendant requesting payment for his covered loss.

2

8.      Defendant subsequently confirmed that Plaintiff had sustained a covered loss to his property, and that Defendant was contractually obligated to pay Plaintiff's claim for his covered loss pursuant to the terms of his insurance policy.

9.      On or about August 8, 2008, Defendant sent an adjuster to inspect the damage to Plaintiff's property.   As set forth in the adjuster's written estimate and correspondence to Plaintiff dated August 14, 2008, Defendant's adjuster determined Plaintiff had suffered a covered loss in the amount of $5,989.33.  The estimate included the cost of materials and labor required to complete the repairs.  A copy of the estimate and other documents pertaining to this claim are attached as Exhibit "A."

10.     In calculating its payment obligations to Plaintiff, Defendant subtracted from the adjuster's replacement cost estimate the $1,000.00 deductible provided for in the policy plus an additional $694.94 for depreciation.  Plaintiff then received a net payment of $4,294.39 on his claim.

11.     The estimate upon which Plaintiff's payment was based indicates that Defendant depreciated both material costs and labor costs associated with repairs to the dwelling.  For example, Defendant estimated the cost of removing and replacing 31.30 squares of composition shingles at $4,382.00, based on a unit cost of $140.00 per square, which includes materials and labor.  Defendant then depreciated the total replacement cost estimate, which includes both materials and labor, by $657.30 to arrive at what it designates as an "ACV," *i.e.* actual cash value, of $3,724.70.

### Policy Terms and Claims Settlement Practices

12.     The policies of insurance Defendant issued to Plaintiff and other members of the proposed class provide replacement cost value ("RCV") coverage for both total loss of and

3

partial loss to covered dwellings and other structures.

13.     At all times relevant to this cause of action, Defendant's custom and practice has been to pay its RCV policy holders the actual cash value ("ACV") of covered partial loss claims, net of any applicable deductible.  In order to qualify for additional payment and recover the full RCV of the covered loss, the insured party must repair, rebuild or replace the damaged property within a specified time frame and submit proof to Defendant that the repair or replacement was timely completed.  Costs that exceed the amount of the ACV payment are the responsibility of the policy holder.

14.     At all times relevant hereto, Defendant's methodology for calculating ACV has been to determine the cost of repairing or replacing the damaged property, then deduct depreciation.

15.     Arkansas law permits an insurer to depreciate physical assets, *i.e.* materials used to repair or replace damaged property, when determining the ACV of a covered claim.  However, an insurer may *not* depreciate labor costs associated with such repair or replacement.

16.     In the context of insurance law, "depreciation" is defined as "[a] decline in *an asset's value* because of use, wear, obsolescence, or age."  BLACK'S LAW DICTIONARY 506 (9th ed. 2009) (emphasis added).  Materials used in the repair or replacement of damaged property *e.g.* roofing shingles, diminish in value over time due to use, wear, obsolescence, and age.  As such, these are assets that can be depreciated.  In contrast, labor is not susceptible to aging or wear.  Its value does not diminish over time.  Conceptually, and practically, depreciation simply cannot be applied to labor costs.

17.     The Arkansas Insurance Department ("AID") recently issued a Bulletin clarifying its position regarding the depreciation of labor in claims made on policies with ACV loss

4

settlement provisions. In Bulletin 13A-2013 the AID stated unequivocally that **"Labor of any kind related to the repair, rebuild, or replacement of covered property cannot be depreciated."** (emphasis in original) In issuing the clarification, the AID emphasized that this "is not a new Department position." Rather, it is recognition, consistent with longstanding legal principles, that materials are subject to depreciation while labor is not.

18.     The position of the AID is also consistent with the universally accepted premise that the basic purpose of property insurance is to provide indemnity to policy holders. To indemnify means to put the insured back in the position he or she enjoyed before the loss - no better and no worse. A policy that provides for payment of the ACV of a covered loss is an indemnity contract because the purpose of the ACV payment is to make the insured whole but not to benefit him or her because a loss occurred. *See* APPLEMAN ON INSURANCE 2D § 3823. An RCV policy expands the basic concept of indemnity to include coverage for repair and replacement costs that exceed the ACV of the loss.

19.     In order to recover the RCV of their covered loss, Plaintiff and other Class Members are required to pay out of pocket the difference between the cost of materials and labor necessary to repair or replace the damaged property and the depreciated ACV payment they received from Defendant. While an insurer may lawfully depreciate material costs in calculating the amount of an ACV payment owed to an insured, it may not depreciate labor costs. Defendant's failure to pay the full cost of the labor necessary to repair or replace Plaintiff's damaged property in the ACV payment left Plaintiff under-indemnified and underpaid for his loss.

20.     Defendant materially breached its duty to indemnify Plaintiff by depreciating labor costs associated with repairs to Plaintiff's property in the ACV payment, thereby paying

5

Plaintiff less than what he was entitled to receive under the terms of his insurance contract.

## Class Action Allegations

21.     Pursuant to Arkansas Rule of Civil Procedure 23, Plaintiffs brings this lawsuit as a class action on behalf of himself and all others similarly situated.  This action satisfies the ARCP 23(a) requirements of numerosity, commonality, typicality, and adequacy of representation, and the Rule 23(b) requirements of predominance and superiority.

22.     The proposed Class which Plaintiff seeks to represent is defined as follows:

All persons and entities that received "actual cash value" payments, directly or indirectly, from Lloyd's for loss or damage to a dwelling or other structure located in the State of Arkansas, such payments arising from events that occurred within the ten years preceding the date of filing of this Class Action Complaint, where the cost of labor was depreciated.  Excluded from the Class are: (1) all persons and entities that received payment from Lloyd's in the full amount of insurance shown on the declarations page; (2) Lloyd's and its affiliates, officers, and directors; (3) members of the judiciary and their staff to whom this action is assigned; and (4) Plaintiff's counsel.

23.     The members of the Class are so numerous that joinder of all members is impracticable.   Plaintiff reasonably believes that hundreds if not thousands of people geographically dispersed across Arkansas have been damaged by Defendant's actions.  The names and addresses of the members of the Class are identifiable through records maintained by Defendant, and Class Members may be notified of the pendency of this action by mailed, published and/or electronic notice.

24.     Common questions of law and fact exist as to all Class Members and predominate over any questions affecting only individual Class Members.  The questions of law and fact common to the Class include, but are not limited to:

> A.      Whether Defendant's insurance policies allow Defendant to depreciate labor in calculating ACV payments for covered losses;

6

B.   Whether Defendant's insurance policies are ambiguous concerning the depreciation of labor costs in calculating ACV payments, and if so, how Defendant's insurance policies should be interpreted;

C.   Whether Defendant's depreciation of labor costs in making ACV payments for covered losses is a breach of the insurance contracts issued by Defendant to Plaintiff and other Class Members;

D.   Whether Plaintiff and other Class Members have been damaged by Defendant's breaches, as alleged herein, and if so:

1.   What is the nature and extent of those damages; and

2.   What relief should be awarded to Plaintiff and other Class Members; and

E.   Whether Defendant has been unjustly enriched by retaining money that should have been paid to Plaintiff and other Class Members.

25.   Plaintiff's claims are typical of the claims of all Class Members, as they are all similarly affected by Defendant's custom and practice of unlawful and unjust conduct and their claims are based on such conduct.  Further, Plaintiff's claims are typical of the claims of all Class Members because their claims arise from the same underlying facts and are based on the same factual and legal theories.  Plaintiff is no different in any material respect from any other member of the Class.

26.   Plaintiff and his counsel will fairly and adequately protect the interests of the members of the Class.  Plaintiff's interests do not conflict with the interests of the Class they seek to represent.  Plaintiff has retained counsel who are competent and experienced in class action litigation, including insurance-related cases.  Plaintiff and his counsel will prosecute this action vigorously.

27.   A class action is superior to all other available methods for the fair and efficient adjudication of this controversy.  Joining all Class Members in one action is impracticable and

7

prosecuting individual actions is not feasible. The size of the individual claims is likely not large enough to justify filing a separate action for each claim. For many, if not most Class Members, a class action is the only procedural mechanism that will afford them an opportunity for legal redress and justice. Even if Class Members had the resources to pursue individual litigation, that method would be unduly burdensome to the courts in which such cases would proceed. Individual litigation exacerbates the delay and increases the expense for all parties, as well as the court system. Moreover individual litigation could result in inconsistent adjudications of common issues of law and fact.

28.     In contrast, a class action will minimize case management difficulties and provide multiple benefits to the litigating parties, including efficiency, economy of scale, unitary adjudication with consistent results and equal protection of the rights of each Plaintiff and Class Member. These benefits would result from the comprehensive and efficient supervision of the litigation by a single court.

29.     Class certification is further warranted because Defendant has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the Class as a whole.

<b>Fraudulent Concealment</b>

30.     At all times relevant to the allegations set forth herein, Defendant owed a fiduciary duty to, and/or had a special relationship with, Plaintiff and other Class Members.

31.     Throughout the claims process, Plaintiff and other Class Members asked Defendant to pay them what they were entitled to receive as the ACV of their covered losses under the terms of their insurance policies. Defendant represented to Plaintiff and other Class

8

Members that their ACV payments were the full amount owed under their policies and that no additional money was owed.

32.     Plaintiff and other Class Members justifiably and reasonably relied upon Defendant's representations that they had received all they were entitled to recover as ACV payments from Defendant under the terms of their policies.

33.     Defendant had a duty to disclose to Plaintiff and other Class Members that they were entitled to recover the full cost of labor necessary to repair or replace their property in their ACV payments. Defendant not only failed to disclose this information, it acted in a manner designed to conceal it from Plaintiff and other Class Members.  Because of Defendant's actions, Plaintiff and other Class Members could not have known they had been underpaid on their claims through the exercise of due diligence.

34.     Defendant's fraudulent concealment tolls the running of any statute of limitations that may otherwise be applicable to the claims for relief asserted herein.

### Causes of Action

### Count I - Breach of Contract

35.     Plaintiff hereby incorporates by reference all preceding paragraphs as if fully set forth herein.

36.     Defendant entered into policies of insurance with Plaintiff and other members of the proposed Class.  These policies govern the relationship between Defendant, Plaintiff and other Class Members, as well as the manner in which claims for covered losses are handled.

37.     The insurance policies at issue were drafted by Defendant and are essentially identical in all respects material to this litigation.

9

38.     Plaintiff and other Class Members complied with all material provisions and fulfilled their respective duties with regard to their policies.

39.     The policies of insurance Defendant issued to Plaintiff and other members of the proposed class state that in the event of a partial loss Defendant may fulfill its initial contractual obligation to an insured party by paying the ACV of the loss.  At all times relevant hereto, Defendant's custom and practice has been, and is, to make such payments based upon Defendant's calculation of the ACV for the partial loss, net of any applicable deductible.

40.     Defendant breached its contractual duty to pay Plaintiff and other Class Members the ACV of their claims by unlawfully depreciating labor costs.

41.     Defendant's actions in breaching its contractual obligations to Plaintiff and other Class Members benefitted, and continue to benefit, Defendant.  Likewise, Defendant's actions damaged, and continue to damage, Plaintiff and other Class Members.

42.     Defendant's actions in breaching its contractual obligations, as described herein, are the direct and proximate cause of damages to Plaintiff and other Class Members.

43.     In light of the foregoing, Plaintiff and other Class Members are entitled to recover damages sufficient to make them whole for all amounts Defendant unlawfully withheld from their ACV payments as labor cost depreciation.

### Count II – Unjust Enrichment

44.     Plaintiff hereby incorporates by reference all preceding paragraphs as if fully set forth herein.

45.     Defendant's conduct as described above, and as more specifically alleged in this Count, also constitutes unjust enrichment, for which Plaintiff and other Class Members are entitled to pursue equitable remedies in accordance with Arkansas law.

10

46. Defendant made payments to Plaintiff and other Class Members for covered losses to their property which ostensibly represented the ACV of their claims, net of deductibles. However, in calculating the ACV of such claims, Defendant wrongfully depreciated labor costs. As a result, the payments Plaintiffs and other Class Members received were less than the true ACV of their claims.

47. Defendant's actions were unjust and inequitable in that it paid Plaintiff and other Class Members less than they were entitled to receive for their claims.

48. Defendant's actions were unjust and inequitable in that Defendant failed to disclose to Plaintiff and other Class Members that they were receiving less than the true ACV of their claims.

49. Defendant's actions were unjust and inequitable in that Defendant concealed from Plaintiff and other Class Members that they were receiving less than the true ACV of their claims.

50. Defendant's actions were unjust and inequitable in that Defendant owed a fiduciary duty to, and/or had a special relationship with, Plaintiff and other Class Members.

51. As a result of its unjust and inequitable actions, Defendant was unjustly enriched by receiving something of value it was not entitled to. More specifically, Defendant retained, and had the beneficial use of, money that Plaintiff and other Class Members were entitled to and should have received in payment of their claims.

52. As a result of its unjust and inequitable actions, Defendant was unjustly enriched by receiving money under such circumstances that, in equity and good conscience, it ought not to retain.

11

53. In light of the foregoing, Plaintiff and other Class Members are entitled to restitution and other equitable relief.

## Prayer for Relief

WHEREFORE, Plaintiff Stephen Rafaelli, individually and on behalf of all others similarly situated, request that the Court grant them the following relief:

A. Certify that this lawsuit may be prosecuted as a Class Action pursuant to Rule 23 of the Arkansas Rules of Civil Procedure;

B. Appoint Plaintiff and Plaintiff's counsel to represent the Class;

C. Declare that Defendant has breached its contractual obligations to the Class by depreciating labor costs;

D. Declare that Defendant has been unjustly enriched as the result of its wrongful conduct;

E. Award the Class damages in an amount equal to the total amount of depreciated labor costs withheld on Class Members' claims;

F. Award the Class additional damages in the amount of twelve percent (12%) of the depreciated labor costs recovered pursuant to Ark. Code Ann. § 23-79-208;

G. Award the Class prejudgment and post-judgment interest;

H. Enjoin Defendant from engaging in the unlawful and unjust conduct complained of herein;

I. Award the Class reasonable attorneys' fees and costs; and

J. Afford the Class any and all additional relief to which Plaintiffs and other Class Members may prove themselves entitled.

12

Respectfully submitted,

STEPHEN RAFAELLI, Individually and on behalf
of all others similarly situated, PLAINTIFF

By:

MATT KEIL, #86099
JOHN C. GOODSON, #90018
KEIL & GOODSON, P.A.
406 Walnut Street
Texarkana, AR 71854
Telephone:     (870) 772-4113
Facsimile:     (870) 773-2967

**Counsel for Plaintiff and the Proposed Class**

13

# EXHIBIT A

# NON-WAIVER AGREEMENT

It is hereby agreed between Steve Raffaelli the Insured under Policy No. **3921145** issued by **Burns & Wilcox**, hereinafter called Insured, and said **Burns & Wilcox.**, hereinafter called the Company, that any action taken by the Company in investigating the cause of loss, injury or damage or investigating and ascertaining the amount of loss and damage to the property of the Insured caused by accident alleged to have occurred on the **1st** day of **April, 2008**, shall not operate in any way as a waiver or invalidate any of the conditions of said Policy nor any of the rights of either of the parties hereto under said Policy; and in the event any suit has been or shall be filed against the Insured growing out of said accident, should the Company elect to defend said suit defense thereof by it shall not be construed as a waiver of any of the conditions of said Policy, or any of its rights thereunder. And no act of the company done hereunder shall be construed as an admission of liability under said Policy on its part.

**Non-Waiver is being taken due to late reporting. This property is located at 320 Beech Street Texarkana, Arkansas 71854.**

It is the intention of this agreement to preserve all the rights of the parties hereto and provide for an investigation of the loss and the amount thereof without in any way affecting, impairing or adding to the liability of the Company under said Policy, or waiving any of its rights thereunder, and no act of the Company hereunder shall be construed as an admission of its liability.

EXECUTED IN DUPLICATE at _1 201 MALLSn_ this _30_ th day of _July_. _200_

_Stephen A Raffaelli_
                                  Insured             Insurance Company

Its Agent

JUL     JOB WED 08:11 AM CAC TEXARKANA         FAX NO. 9037935445          P. 02

# NON-WAIVER AGREEMENT

It is hereby agreed between Steve Raffaelli  the Insured under Policy No. **3921145** issued by **Burns & Wilcox**, hereinafter called Insured, and said **Burns & Wilcox.**, hereinafter called the Company, that any action taken by the Company in investigating the cause of loss, injury or damage or investigating and ascertaining the amount of loss and damage to the property of the Insured caused by accident alleged to have occurred on the **1st** day of **April, 2008**, shall not operate in any way as a waiver or invalidate any of the conditions of said Policy nor any of the rights of either of the parties hereto under said Policy; and in the event any suit has been or shall be filed against the Insured growing out of said accident, should the Company elect to defend said suit defense thereof by it shall not be construed as a waiver of any of the conditions of said Policy, or of any of its rights thereunder. And no act of the company done hereunder shall be construed as an admission of liability under said Policy on its part.

**Non-Waiver is being taken due to late reporting. This property is located at 320 Beech Street Texarkana, Arkansas 71854.**

It is the intention of this agreement to preserve all the rights of the parties hereto and provide for an investigation of the loss and the amount thereof without in any way affecting, impairing or adding to the liability of the Company under said Policy, or waiving any of its rights thereunder, and no act of the Company hereunder shall be construed as an admission of its liability.

EXECUTED IN DUPLICATE at  / 90/ Mill Dr       this 30th July
day of   July , 2008 .

_____
                                                Insured

_____
                                                Insurance Company

_____
                                                Its Agent



Burns & Wilcox Ltd.
Your Specialty Insurance Professionals
National Underwriting Managers and Brokers
Largest Independently Owned Wholesaler

3921145 / EE - IL

**REMITTANCE ADVICE**

CL   8/12/2008

94890



320 Beech Street





# Burns & Wilcox Ltd.

## A KAUFMAN GROUP COMPANY

## 3010 Highland Parkway, Suite 650, Downers Grove, IL 60515
## Phone (800) 254-5411 Fax 630-795-0296

August 14, 2008

Stephen Rafaelli
1901 Mall Drive
Texarkana, TX 75503

RE:   INSURED    :   Stephen Rafaelli

       POLICY NO.   :   313430

       CLAIM NO.   :   3921145

       D/LOSS    :   04/01/08

Dear Mr. Rafaelli:

We are writing you under the authority of Certain Underwriters at Lloyd's, London, hereafter referred to as "Underwriters" who issued a policy on your behalf.

We acknowledge receipt of a claim for damages to your property at 320 Branch Street in Texarkana, Arkansas as a result of hail, which occurred on the above captioned date. As you know, Bill Gordon of Central Adjustment Co. was assigned to inspect the premises and appraise the damages sustained.

We are in receipt of their report and estimate of the damages. The estimated covered damages are in the amount of $5,989.33. It is our understanding that Mr. Gordon may have discussed these figures with you. We enclose a copy of his estimate for your reference.

Your policy provides that a $1,000.00 deductible be applied to each and every claim prior to loss payment. The policy also states that Underwriters will not be liable for more than the Actual Cash Value of the property until the repairs or replacement are complete. After applying the deductible and applicable depreciation the amount of $694.94, the net Actual Cash Value is $4,294.39. If repairs/replacement are made, you may make a supplemental claim the amount of withheld depreciation within 180 days from the date of our payment, August 12, 2008. Please understand further claim is subject to all policy terms and conditions, supplemental inspections, and/or documentation in support of the supplemental claim.

Page two

We are enclosing our check in the amount of $4,294.39, which represents the net Actual Cash Value portion of your claim.

The Underwriters require receipt of a signed proof of loss. Please return the enclosed proof to us at the address noted above.

Negotiating and depositing this check shall be deemed as your acceptance of settlement for this portion of the claim.

Should you have any questions or concerns, please do not hesitate to contact this office.

Sincerely,

Eric L. Ellis
Property Claim Supervisor
X-2207

Enclosure

/ele

# SWORN STATEMENT PROOF OF LOSS
## REPLACEMENT COST POLICY

| | |
|---|---|
| 313430 | 11/05/07 |
| POLICY NUMBER | DATE ISSUED |
| 3921145 | 11/07/08 |
| CLAIM NUMBER | DATE EXPIRED |

To      Certain Underwriters at Lloyd's, London          At time of loss, by the above indicated policy of insurance you insured Stephen Raffaelli      against loss by Physical Damage to the property described under Schedule "A" according to the terms and conditions of the said policy and all forms, endorsements, transfers and assignments attached thereto.

1. **Time and Origin:** A      Physical Damage          loss occurred on the  1st    day of April, 2008. The cause and origin of the said loss were: Hail.

2. **Occupancy:** The building described, or containing the property described, was occupied at the time of the loss as follows, and for no other purpose whatever: tenant occupied apartments.

3. **Title and Interest:** At the time of the loss the interest of your insured in the property described therein was_ as owner                        No   other   person(s)   had   any   interest   therein   or encumbrance thereon, except: Guaranty Bond Bank.

4. **Full cost of Repair or Replacement is** ...........................................................$5,989.33

5. **Less Applicable Depreciation or Betterment**.................... ........................- $694.94
Recoverable within 180 days of the date of PAYMENT.

6. **Actual Cash Value Loss (Line 4 minus Line 5)**..........................................$5,294.39

7. **Less Amount of Deductible**.......................... ...............................................-$1,000.00

8. **Amount Claimed under the above numbered policy is**..................................$4,294.39

In consideration of and to the extent of said payment the undersigned hereby subrogates said Company, to all of the rights, claims and interest which the undersigned may have against any party, person(s), property or corporation liable for the loss mentioned above, and authorizes the said Company to sue, compromise, or settle in the undersigned's name or otherwise all such claims to execute and sign releases and acquaintances and endorse checks or drafts given in settlement of such claims in the name of the undersigned, with the same force and effect as I the undersigned executed or endorsed them.

  Warranted no settlement has been made by the undersigned with any party, person(s), property of corporation against whom a claim may lie, and no release has been given to anyone responsible for the loss, and that no such settlement will be made nor release given by the undersigned without the written consent of the said Company and the undersigned covenants and agrees to cooperate fully with said Company in the prosecution of such claims, and to procure and finish all papers and documents, in the undersigned's possession, necessary in such proceedings and to attend court and testify if the Company deems such to be necessary but it is understood the undersigned is to be saved harmless from costs in such proceedings.

The said loss did not originate by any act, design or procurement on the part of your insured, or this affiant; nothing has been done by or with the privity or consent of your insured or this affiant, to violate the conditions of the policy, or render it void; no articles are mentioned herein or in annexed schedules but such as were destroyed or damaged at the time of said loss; no property saved has in any manner been concealed, and no attempt to deceive the said Company, as to the extent of said loss, has in any manner been made. Any other information that may be required will be furnished and considered as part of this proof.

The furnishing of this blank or the preparation of proofs by a representative of the above insurance company is not a waiver of any of its rights.

CAUTION: READ BEFORE SIGNING

X                                       X

       Witness                             Insured,

                                      X

                                      Insured,

State of

County of

Subscribed and sworn to before me this   _____ day of                   , 20____.

My term expires                     , 20____.

                                      Notary Public

Claim number 3921145

T-4533

Main Level

Main Level

| DESCRIPTION | QUANTITY | UNIT COST | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|
| 1. R&R Laminated - 30 yr. - comp. shingle rfg - incl. felt | 31.30 SQ | 140.00 | 4,382.00 | (657.30) | 3,724.70 |
| 5. R&R Additional charge for high roof (2 stories or greater) | 31.30 SQ | 15.00 | 469.50 | (0.00) | 469.50 |
| 3. R&R Roof vent - turbine type | 1.00 EA | 78.23 | 78.23 | (7.40) | 70.83 |
| 2. Remove Tear off, haul and dispose of comp. shingles - 30-40 year | 28.46 SQ | 30.00 | 853.80 | (0.00) | 853.80 |
| 4. R&R Continuous ridge vent - shingle-over style | 8.00 LF | 5.47 | 43.76 | (6.10) | 37.66 |
| Total: Main Level | | | 5,827.29 | 670.80 | 5,156.49 |
| Line Item Totals: T-4533 | | | 5,827.29 | 670.80 | 5,156.49 |

**Grand Total Areas:**

| | | |
|---|---|---|
| 0.00 SF Walls | 0.00 SF Ceiling | 0.00 SF Walls and Ceiling |
| 0.00 SF Floor | 0.00 SY Flooring | 0.00 LF Floor Perimeter |
| 0.00 SF Long Wall | 0.00 SF Short Wall | 0.00 LF Ceil. Perimeter |
| 0.00 Floor Area | 0.00 Total Area | 0.00 Interior Wall Area |
| 0.00 Exterior Wall Area | 0.00 Exterior Perimeter of Walls | |
| 2,846.05 Surface Area | 28.46 Number of Squares | 208.00 Total Perimeter Length |
| 4.00 Total Ridge Length | 145.30 Total Hip Length | |

T-4533

8/8/2008                Page: 2

MILLER COUNTY CIRCUIT CLERK        DOCUMENT # CTX-000000030832        PAGE 22 OF 23

## Summary for Building

| | | | | |
|---|---|---|---|---:|
| Line Item Total | | | | 5,827.29 |
| Material Sales Tax | @ | 8.250% x | 1,964.11 | 162.04 |
| Replacement Cost Value | | | | $5,989.33 |
| Less Depreciation | | | | (694.94) |
| Actual Cash Value | | | | $5,294.39 |
| Less Deductible | | | | (1,000.00) |
| Net Claim | | | | $4,294.39 |
| Total Recoverable Depreciation | | | | 694.94 |
| Net Claim If Depreciation is Recovered | | | | $4,989.33 |

Bill Gordon

T-4513

8/8/2008        Page: 3

MILLER COUNTY CIRCUIT CLERK     DOCUMENT # CTX-000000030832     PAGE 23 OF 23